## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MURIEL JENKINS,
an individual,

                                         Case No.:

       Plaintiff,

v.

THE TERMINIX INTERNATIONAL
COMPANY LIMITED PARTNERSHIP,
a foreign limited partnership,
THE SERVICEMASTER ACCEPTANCE
COMPANY LIMITED PARTNERSHIP,
a foreign limited partnership, and
FOCUS RECEIVABLES MANAGEMENT, LLC,
a foreign limited liability company,

       Defendants.

_____/

## VERIFIED COMPLAINT

**COMES NOW**, Plaintiff, MURIEL JENKINS (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, THE TERMINIX INTERNATIONAL COMPANY LIMITED PARTNERSHIP (hereinafter, "TIC"), THE SERVICEMASTER ACCEPTANCE COMPANY LIMITED (hereinafter, "SMAC"), and FOCUS RECEIVABLES MANAGEMENT (hereinafter, "FRM"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

This is an action for damages for violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA"), the Fair Debt Collection Practices Act, 15 United States Code, Section 1692a, *et seq*. (hereinafter, the "FDCPA"), the Telephone Consumer Protection Act, 47 United States Code, Section 227 (hereinafter, the "TCPA"), and for declaratory and injunctive relief in equity.

1

## JURISDICTION, VENUE & PARTIES

1.      Jurisdiction of this Court arises under 15 United States Code, Section 1692k(d), 47 United States Code, Section 227(b)(3), 28 United States Code, Section 1337, and supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.

2.      Venue in this District is proper because Defendants transact business in this District, and the conduct complained of occurred in this District.

3.      At all material times herein, the conduct of Defendants, complained of below, occurs in Pinellas County, Florida.

4.      At all material times herein, Plaintiff is an individual residing in Pinellas County, Florida.

5.      At all material times herein, TIC is a foreign limited partnership existing under the laws of the state of Delaware that, itself and through its subsidiaries, regularly extends pest-control services to, and enters into contracts for pest-control services with, residents in Pinellas County, Florida.

6.      At all material times herein, SMAC is a foreign limited partnership existing under the laws of the state of Delaware that, itself and through its subsidiaries, regularly services and collects debts due to another in Pinellas County, Florida.

7.      At all material times herein, FRM is a foreign limited liability company existing under the laws of the state of Georgia that, itself and through its subsidiaries, regularly collects debts due to another in Pinellas County, Florida.

## GENERAL ALLEGATIONS

8.      At all material times herein, TIC and SMAC are each a "creditor" as defined by Florida Statutes, Section 559.55(5).

2

9.      At all material times herein, FRM is a "debt collector" as defined by 15 United States Code, Section 1692a(6) and Florida Statutes, Section 559.55(7).

10.     At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8) and 15 United States Code, Section 1692a(3).

11.     At all material times herein, FRM uses interstate mail while engaging in a business the principal purpose of which is the collection of debts allegedly due another.  FRM is also an entity who regularly collects or attempts to, directly or indirectly, collect debts owed or due, or asserted to be owed or due, another from consumers in Pinellas County, Florida.

12.     At all material times herein, Defendants attempt to collect a debt, including but not limited to, an alleged balance due under a cancelled contract for consumer pest-control services at Plaintiff's home residence, referenced by account numbers ending in -5145 and -1454 (hereinafter, the "Debt").

13.     At all material times herein, the Debt is a consumer debt, an obligation resulting from a transaction for goods or services and was incurred primarily for personal, household or family use.

14.     At all material times herein, FRM received the Debt for collection–and collected the Debt–after the Debt was allegedly in default.

15.     At all material times herein, each Defendant is a "person" subject to Florida Statutes, Section 559.72.  *See* Fla. Stat. §§ 559.55(5), (7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

16.     At all material times herein, Defendants' conduct, with regard to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2) and 15 United States Code, Section 1692a(2).

17.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

18.     All necessary conditions precedent to the filing of this action occurred or have been waived by Defendants.

## FACTUAL ALLEGATIONS

19.     On or about April 4, 2015, Plaintiff entered into a retail installment agreement with TIC under which TIC provided pest-control services at Plaintiff's home residence, referenced by account numbers ending in -5145 and -1454 (hereinafter, "Service Agreement").  Please see a true and correct copy of said Service Agreement labeled as Exhibit "A."

20.     The Service Agreement states:

> **BUYER'S RIGHT TO CANCEL: This is a home solicitation sale, and if you do not want the goods or services, you may cancel this agreement by providing written notice to the seller in person, by telegram, or by mail.  This notice must indicate that you do not want the goods or services and must be delivered or postmarked before midnight of the third business day after you sign this agreement.**

*See* Ex. A at p. 1 (emphasis in original).

21.     Additionally, the Service Agreement provides that Plaintiff should make all payments to SMAC at "SMAC P.O. Box 2092, Memphis, Tennessee 38101."  *See* Ex. A at p. 2.

22.     On or about April 4, 2015, Plaintiff made her first monthly payment of $119.95 to SMAC in accordance with the terms of the Service Agreement.  Please see a true and correct copy of Plaintiff's cancelled check to SMAC labeled as Exhibit "B."

23.     On or about April 24, 2015, Defendants sent Plaintiff a billing statement in an attempt to collect the Debt.  Please see a true and correct copy of said billing statement labeled as

4

Exhibit "C."

24.     On or about May 3, 2015, Plaintiff paid the monthly balance of $119.95 to SMAC in accordance with the terms of the Service Agreement.  Please see a true and correct copy of Plaintiff's cancelled check to SMAC labeled as Exhibit "D."

25.     On or about May 22, 2015, Defendants sent Plaintiff a billing statement in an attempt to collect the Debt.  Please see a true and correct copy of said billing statement labeled as Exhibit "E."

26.     On or about June 1, 2015, Plaintiff called TIC to request cancellation of the Service Agreement and the associated pest control service from TIC.

27.     During the immediately-aforementioned call, Plaintiff spoke with TIC's employee or representative "Jackie," and Jackie confirmed that she cancelled Plaintiff's contract with TIC.

28.     Additionally, during the above-referenced call, Plaintiff requested a confirmation number for the cancellation of the Service Agreement for her records.

29.     In response, Jackie refused to supply a confirmation number, but asserted that she would update the contract status within the Terminix.com customer portal.

30.     Further, Jackie informed Plaintiff that SMAC manages the financing and payment processing for TIC's customer installment contract and that Plaintiff must contact SMAC to terminate the Service Agreement.

31.     On or about June 1, 2015, per TIC's representative Jackie's instruction, Plaintiff called SMAC to request cancellation of the Service Agreement.

32.     During the immediately-aforementioned call, Plaintiff spoke with SMAC's employee or representative "Barbara," and Barbara advised Plaintiff that she could not cancel Plaintiff's Service Agreement and that Barbara would contact TIC regarding terminating the

Service Agreement.

33.     On or about June 8, 2015, Plaintiff again called TIC to discuss the cancellation of the Service Agreement.

34.     During the immediately-aforementioned call, Plaintiff spoke with TIC's employee or representative "Donna," and Donna again confirmed TIC cancelled the Service Agreement as of June 1, 2015.

35.     On or about June 8, 2015, Plaintiff again called SMAC to discuss the cancellation of the Service Agreement.

36.     During the immediately-aforementioned call, Plaintiff spoke with SMAC's employee or representative "Erin," and Erin advised Plaintiff that SMAC sent notice of the Service Agreement cancellation to TIC but had not received a response.

37.     Further, during the above-referenced call, Erin advised Plaintiff she would call TIC and provide Plaintiff with an update within forty-eight hours with a resolution.

38.     SMAC never contact Plaintiff with an update or resolution after the June 8, 2015 call.

39.     During June 2015, Plaintiff repeatedly attempted to contact both TIC and SMAC to resolve the Service Agreement cancellation and to obtain a confirmation of the cancellation, but neither TIC nor SMAC provided any helpful information and often ignored Plaintiff's calls.

40.     Despite TIC's repeated oral confirmations of cancellation of the Service Agreement, neither TIC nor SMAC ever provided Plaintiff a written confirmation of cancellation of the Service Agreement.

41.     In an abundance of caution to ensure that she remained current on all personal debts, thus protecting her credit, Plaintiff continued to pay the monthly balance due under the Service

6

Agreement.

42.     On or about June 20, 2015, despite Plaintiff cancelling the Service Agreement, Defendants sent Plaintiff a billing statement in an attempt to collect the Debt.  Please see a true and correct copy of said billing statement labeled as Exhibit "F.

43.     On or about June 24, 2015, Plaintiff paid the monthly balance of $119.95 in accordance with the terms of the Service Agreement.  Please see a true and correct copy of Plaintiff's cancelled check to SMAC labeled as Exhibit "G."

44.     On or about July 3, 2015, Plaintiff paid the monthly balance of $119.95 and a late payment fee of $2.50 in accordance with the terms of the Service Agreement.  *See* Ex. G.

45.     Prior to August 1, 2015, TIC and SMAC turned the Debt over to FRM for collection from Plaintiff.

46.     When TIC and SMAC turned the Debt over to FRM for collection from Plaintiff, TIC and SMAC advised FRM that Plaintiff cancelled the Service Agreement and that Plaintiff did not owe any money regarding the Debt.

47.     FRM's telephone calls, as more specifically alleged below, were made to Plaintiff's cellular telephone number ending in -5980 (hereinafter, "Cellular Telephone" using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

48.     Plaintiff is the owner, regular user, and possessor of a Cellular Telephone with the assigned number ending in -5980.

49.     FRM's telephone calls, as described herein, were made from telephone number 844.240.9758, unless otherwise specified.

50.     At no time herein did Defendants possess Plaintiff's prior express consent to make

calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

51.     Further, if Defendants contend they possessed such consent, Plaintiff revoked any such consent—to the extent it ever existed—he moment Plaintiff cancelled the Service Agreement and no longer owed a debt to Defendants.  Also, Plaintiff repeatedly revoked such consent when she requested that FRM cease calling her Cellular Telephone on numerous calls made by FRM.

52.     Additionally, if Defendants contend the below-referenced phone calls were made for "informational purposes only," they nevertheless lacked the required prior express written consent necessary to place such informational calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

53.     During the month of August 2015, FRM repeatedly made calls to Plaintiff's Cellular Telephone in an attempt to collect the Debt.

54.     During several of the above-referenced calls, Plaintiff advised FRM that she made all required payments in compliance with the Service Agreement and cancelled the Service Agreement, and Plaintiff demanded that FRM cease calling her Cellular Telephone.

55.     On or about August 11, 2015, Plaintiff paid the monthly balance of $119.95 in accordance with the terms of the Service Agreement.  Please see a true and correct copy of Plaintiff's cancelled check to SMAC labeled as Exhibit "H."

56.     On or about August 28, 2015, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—called Plaintiff's Cellular Telephone.

57.     FRM made the immediately-aforementioned call from telephone number 866.664.2512 in an attempt to collect the Debt from Plaintiff.

58.     On or about August 29, 2015, despite Plaintiff terminating the Service Agreement

and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—called Plaintiff's Cellular Telephone.

59. FRM made the immediately-aforementioned call from telephone number 678.383.3941 in an attempt to collect the Debt from Plaintiff.

60. On or about August 31, 2015, Plaintiff again called TIC to discuss the cancellation of the Service Agreement and the debt collection calls from FRM.

61. During the immediately-aforementioned call, Plaintiff spoke with TIC's employee or representative "Andrea," and Andrea again confirmed TIC cancelled the Service Agreement as of June 1, 2015 and that Plaintiff does not owe the Debt.

62. Furthermore, Andrea asserted that TIC did not turn the Debt over to collections (i.e., to FRM).

63. On or about August 31, 2015, Plaintiff called SMAC to again discuss the cancellation of the Service Agreement.

64. During the immediately-aforementioned call, Plaintiff spoke with SMAC's employee or representative "Dorothy," and Dorothy confirmed that TIC cancelled the Service Agreement as of June 1, 2015 and that Plaintiff does not owe SMAC the Debt under the Service Agreement.

65. On or about August 31, 2015, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—called Plaintiff's Cellular Telephone two times.

66. FRM made the immediately-aforementioned calls from telephone numbers 678.228.3004 and 678.228.3941in an attempt to collect the Debt from Plaintiff.

67.     On or about September 1, 2015, Plaintiff called SMAC to again discuss the cancellation of the Service Agreement.

68.     During the immediately-aforementioned call, Plaintiff spoke with SMAC's employee or representative "Yolanda," in which Yolanda again confirmed that TIC cancelled the Service Agreement as of June 1, 2015, that Plaintiff does not owe SMAC or TIC a Debt under the Service Agreement, and that Plaintiff may stop making monthly installment payments to SMAC.

69.     Furthermore, Yolanda informed Plaintiff that SMAC would send Plaintiff refund checks for Plaintiff's payments made to SMAC after the cancellation of the Service Agreement.

70.     On or about September 1, 2015, SMAC sent Plaintiff a check in the amount of $482.30 representing refunds for four (4) monthly installment payments.  Please see attached a true and correct copy of said check labeled as Exhibit "I."

71.     On or about September 2, 2015, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—called Plaintiff's Cellular Telephone.

72.     FRM made the immediately-aforementioned calls from telephone number 678.383.3941 in an attempt to collect the Debt from Plaintiff.

73.     On or about September 4, 2015, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—called Plaintiff's Cellular Telephone two times.

74.     FRM made the immediately-aforementioned calls from telephone numbers 901.597.4447 and 866.664.2512 in an attempt to collect the Debt from Plaintiff.

75.     During one of the above-referenced calls on September 4, 2015, FRM's employee

or representative "Robin Ellis" demanded that Plaintiff verify personal information.

76.     After Plaintiff inquired as to the nature of the call, Robin Ellis refused to provide additional information and ended the call.

77.     On or about September 8, 2015, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—called Plaintiff's Cellular Telephone.

78.     FRM made the immediately-aforementioned call from telephone number 866.664.2512 in an attempt to collect the Debt from Plaintiff.

79.     On or about September 9, 2015, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—called Plaintiff's Cellular Telephone.

80.     FRM made the immediately-aforementioned call from telephone number 866.664.2512 in an attempt to collect the Debt from Plaintiff.

81.     On or about September 15, 2015, SMAC sent Plaintiff a check in the amount of $119.95 representing an additional refund for one (1) monthly installment payment.  Please see a true and correct copy of said check labeled as Exhibit "J."

82.     On or about September 15, 2015, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—called Plaintiff's Cellular Telephone.

83.     FRM made the immediately-aforementioned call from telephone number 866.664.2512 in an attempt to collect the Debt from Plaintiff.

84.     Plaintiff answered the call immediately, however, FRM hung up and ended the call.

11

85.     On or about September 17, 2015, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf —and with TIC's and SMAC's consent, knowledge, and approval—called Plaintiff's Cellular Telephone.

86.     FRM made the immediately-aforementioned call from telephone number 866.664.2512.

87.     On or about September 18, 2015, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf —and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone.

88.     FRM made the immediately-aforementioned call from telephone number 866.664.2512.

89.     Plaintiff answered the call immediately, however, FRM hung up and ended the call.

90.     On or about September 21, 2015, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf —and with TIC's and SMAC's consent, knowledge, and approval—called Plaintiff's Cellular Telephone.

91.     FRM made the immediately-aforementioned call from telephone number 866.664.2512.

92.     Plaintiff answered the call immediately, however, FRM hung up and ended the call.

93.     On or about September 29, 2015, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf —and with TIC's and SMAC's consent, knowledge, and approval—called Plaintiff's Cellular Telephone.

94.     FRM made the immediately-aforementioned call from telephone number 866.664.2512.

95.     Plaintiff answered the call immediately, however, FRM hung up and ended the call.

96.     Beginning in September 2015, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—reported the Debt to the credit bureaus as negative accounts in collection on Plaintiff's credit report.  Please see attached true and copy copies of the relevant pages of Plaintiff's Experian, Equifax, and TransUnion credit reports as of November 2015 labeled as Exhibit "K."

97.     The immediately-aforementioned credit reporting constitutes an attempt by Defendants to collect the Debt from Plaintiff

98.     On or about November 21, 2015, Plaintiff retained Leavengood, Dauval, Boyle & Meyer, P.A. (hereinafter "Undersigned Counsel") for representation with respect to the Debt and Defendants' collection efforts on the Debt.

99.     Plaintiff has not been able, due to both professional and personal commitments, as well as the continued and increasing stress associated with the barrage of Debt collection calls, to record the specifics (as done above) on each and every call made to Plaintiff.  Plaintiff asserts, however, that the above-referenced calls are but a sub-set of the total calls she is aware, and each caused stress, anxiety, and inability to use her Cellular Telephone when FRM made such calls, all in violation of the FCCPA, FDCPA and TCPA.  FRM is in the best position to determine and ascertain the number and methodology of calls made to Plaintiff.

100.    As of the date of the filing of this Complaint, neither TIC, SMAC, nor FRM have provided Plaintiff with written confirmation regarding the cancellation of the Service Agreement,

and TIC and SMAC failed to provide Plaintiff with any documentation regarding the cancellation of the Service Agreement on the Terminix.com customer portal website.

101.   As a direct result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, confusion and loss of sleep, believing that the cancelling of the Service Agreement and her repeated attempts to advise and confirm the same with Defendants were wholly ineffective and the frequent, repeated debt collection attempts would simply have to be endured unless Plaintiff paid a Debt she did not owe.

102.   Plaintiff retained Undersigned Counsel for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

103.   Florida Statutes, Section 559.77 provides for the award of $1,000.00 statutory damages, actual damages, punitive damages, and an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

104.   United States Code, Title 15, Section 1692k provides for the award of up to $1,000.00 statutory damages, actual damages, as well as an award of attorneys' fees, and costs to Plaintiff, should Plaintiff prevail in this matter against FRM.

105.   United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made using any automatic telephone dialing system or an artificial or pre-recorded voice to Plaintiff's Cellular Telephone in violation of the TCPA or the regulations proscribed thereunder.

106.   Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call made using any automatic telephone dialing system or an artificial or prerecorded voice to Plaintiff's Cellular Telephone in

14

willful or knowing violation of the TCPA or the regulations proscribed thereunder.

107.  As of the date of this complaint, Defendants have not initiated a law suit in an effort to collect the Debt. Likewise, no final judgment regarding the Debt has been obtained by, or transferred to, Defendants.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**<u>VIOLATION OF FLORDA STATUTES, SECTION 559.72(7)</u>**

Plaintiff re-alleges paragraphs one (1) through one-hundred seven (107) as if fully restated herein and further state as follows:

108.  Defendants are subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by collecting consumer Debts from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

109.  Specifically, TIC and SMAC knew—and repeatedly confirmed—Plaintiff's cancellation of the Service Agreement and that Plaintiff did not owe the Debt, and refunded Plaintiff for four (4) monthly installment payments Plaintiff made under the Service Agreement post cancellation.

110.  Despite TIC's and SMAC's above-referenced knowledge and repeated confirmation, TIC and SMAC turned the Debt over to FRM for collection from Plaintiff.

111.  Further, when Plaintiff contacted TIC and SMAC to inquire why the Debt was sent to FRM for collection, TIC and SMAC denied turning the Debt over to collections, and again refused to provide Plaintiff with written confirmation of cancellation of the Service Agreement.

112.  Moreover, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, and despite Plaintiff repeatedly requesting that FRM cease calling her Cellular Telephone, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's

15

consent, knowledge, and approval—made *at least* fourteen (14) calls to Plaintiff's Cellular Telephone in an attempt to collect the Debt.

113.    Furthermore, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—reported the Debt on Plaintiff's credit reports.

114.    Defendants' actions were taken in an attempt to abuse and harass Plaintiff into believing that despite Plaintiff's cancellation of the Service Agreement, TIC and SMAC's repeated confirmation of said cancellation, and Plaintiff's repeated attempts to advise TIC, SMAC, and FRM of the same, Defendants could and would continue their collection activity until the Debt was satisfied.

115.    Defendants' willful and flagrant violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statues, Section 559.72(7).

116.    As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**<u>VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)</u>**

Plaintiff re-alleges paragraphs one (1) through one-hundred seven (107) as if fully restated herein and further states as follows:

117.    Defendants are subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the Debt with knowledge that the Debt is not legitimate or asserting the existence of the legal right with the knowledge that the right does not exist.

118.    Specifically, TIC and SMAC knew—and repeatedly confirmed—Plaintiff's cancellation of the Service Agreement and that Plaintiff did not owe the Debt, and refunded Plaintiff four (4) monthly installment payments Plaintiff made under the Service Agreement post cancellation.

119.    Despite TIC's and SMAC's above-referenced knowledge and repeated confirmation, TIC and SMAC turned the Debt over to FRM for collection from Plaintiff.

120.    Additionally, Plaintiff repeatedly advised FRM that she cancelled the Service Agreement with TIC and SMAC, that TIC and SMAC confirmed said cancellation, and that she owed no money on the Debt.

121.    Despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, and Plaintiff's repeated attempts to advise FRM of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—made *at least* fourteen (14) calls to Plaintiff's Cellular Telephone in an attempt to collect the Debt.

122.    Furthermore, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—reported the illegitimate Debt on Plaintiff's credit reports.

123.    Defendants' conduct, as described above, falsely asserts the right to continually attempt to collect the Debt directly from Plaintiff as Defendants knew that Plaintiff cancelled the Service Agreement and owed no money on the Debt.  Defendants each knew they did not have such a right.

124.    As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692d and d(5)**

Plaintiff re-alleges paragraphs one (1) through one-hundred seven (107) as if fully restated herein and further states as follows:

125.    FRM is subject to, and violated the provisions of, 15 United States Code, Section 1692d(2) by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the Debt by causing Plaintiff's Cellular Telephone to repeatedly and continuously ring or by engaging Plaintiff in telephone conversations with the intent to annoy, abuse, or harass Plaintiff.

126.    Specifically, FRM possessed actual knowledge of Plaintiff's cancellation of the Service Agreement and that Plaintiff owed no money to Defendants on the Debt.   Plaintiff also repeatedly requested that FRM cease calling her Cellular Telephone.

127.    Despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, Plaintiff's repeated attempts to advise FRM of the same, and despite Plaintiff repeatedly requesting that FRM cease calling her Cellular Telephone, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—made *at least* fourteen (14) calls to Plaintiff's Cellular Telephone in an attempt to collect the Debt.

128.    FRM's conduct could have no purpose other than to annoy and harass Plaintiff into paying an illegitimate Debt, as Plaintiff repeatedly confirmed that TIC and SMAC cancelled the Service Agreement, repeatedly confirmed that she did not owe any amount on the Debt, and repeatedly requested that FRM cease calling her Cellular Telephone.

129.    As a direct and approximate result of FRM's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT FOUR:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
<u>**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692e, e(2)(A), and e(10)**</u>

Plaintiff re-alleges paragraphs one (1) through one-hundred seven (107) as if fully restated herein and further states as follows:

130.    FRM is subject to, and violated the provisions of, 15 United States Code, Section 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the Debt through falsely representing the amount or legal status of the Debt.

131.    Specifically, FRM possessed actual knowledge of Plaintiff's cancellation of the Service Agreement and that Plaintiff owed no money to Defendants on the Debt.

132.    Despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, and Plaintiff's repeated attempts to advise FRM of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—made *at least* fourteen (14) calls to Plaintiff's Cellular Telephone in an attempt to collect the Debt.

133.    Furthermore, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—reported the illegitimate Debt on Plaintiff's credit reports.

134.    FRM attempted to collect the Debt from Plaintiff with knowledge that the Debt was not legitimate and as such, FRM attempted to collect an illegitimate debt from Plaintiff by using false, deceptive, or misleading representations or means in the connection with the collect of the Debt.

135.    As a direct and approximate result of FRM's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT FIVE:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692f**

Plaintiff re-alleges paragraphs one (1) through one-hundred seven (107) as if fully restated herein and further states as follows:

136.     FRM is subject to, and violated the provisions of, 15 United States Code, Section 1692f(1) by using unfair or unconscionable means to collect or attempt to collect the Debt from Plaintiff.

137.     Specifically, FRM possessed actual knowledge of Plaintiff's cancellation of the Service Agreement and that Plaintiff owed no money to Defendants on the Debt.

138.     Despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, and Plaintiff's repeated attempts to advise FRM of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—made *at least* fourteen (14) calls to Plaintiff's Cellular Telephone in an attempt to collect the Debt.

139.     Furthermore, despite Plaintiff terminating the Service Agreement and TIC and SMAC's confirmation of the same, FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—reported the illegitimate Debt on Plaintiff's credit reports.

140.     FRM's actions constitute an unfair and unconscionable attempt to collect a Debt from Plaintiff as FRM intended to mislead Plaintiff into paying a Debt Plaintiff does not owe.

141.     As a direct and approximate result of PRG's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT SIX:**
**TELEPHONE CONSUMER PROTECTION ACT-**
**VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)**

Plaintiff re-alleges paragraphs one (1) through one-hundred seven (107) as if fully restated herein and further states as follows:

142.    Defendants are subject to, and violated the provisions of, 47 United States Code, Section 227 (b)(1)(A) by using an automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice to call a telephone number assigned to a cellular telephone service without Plaintiff's prior express consent.

143.    FRM, on TIC's and SMAC's behalf—and with TIC's and SMAC's consent, knowledge, and approval—used an automatic telephone dialing system or an artificial or pre-recorded voice to call Plaintiff's Cellular Telephone *at least* fourteen (14) times in its attempt to collect the Debt.

144.    At no time herein did Defendants possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

145.    Further, if Defendants contend they possessed such consent, Plaintiff revoked any such consent—to the extent it ever existed—the moment Plaintiff cancelled the Service Agreement, no longer owed a debt to Defendants, and repeatedly requested that FRM cease calling her Cellular Telephone.

146.    Additionally, if Defendants contend the referenced phone calls were made for "informational purposes only," they nevertheless lacked the required prior express written consent necessary to place such informational calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

147.    The phone calls made by Defendants complained of herein are the result of repeated

21

willful and knowing violations of the TCPA.

148.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered:

a.   The periodic loss of her cellular phone service;

b.   Lost material costs associated with the use of peak time cellular phone minutes allotted under her cellular phone service contract; and

c.   Stress, anxiety, loss of sleep, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing calls made in violation of the TCPA.

### COUNT SEVEN:
### DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff re-alleges paragraphs one (1) through one-hundred seven (107) as if fully restated herein and further states as follows:

149.   Unless Defendants are immediately enjoined from continuing their unlawful collection of the Debt, Plaintiff will suffer irreparable injury.

150.   Plaintiff possesses no adequate remedy at law.

151.   Plaintiff possesses a clear legal right to the protections of the FCCPA, FDCPA, and TCPA.

152.   Given Defendants' conduct, and their apparent intention and ability to continue to collect the Debt directly from Plaintiff in violation of the aforementioned debt collection laws, Plaintiff has no adequate remedy at law.  Plaintiff needs and is entitled to injunctive relief.

153.   The request injunction is reasonably necessary to protect the legal rights of Plaintiff and will have no adverse effect on the public welfare.

### PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of the Defendants' conduct, Plaintiff

respectfully requests against Defendants an entry of:

      a.      Judgment declaring that Defendants violated the FCCPA;

      b.      Judgment for maximum statutory damages for each Defendant's violations of the FCCPA;

      c.      Judgment for maximum statutory damages for FRM's violations of the FDCPA;

      d.      Judgment providing declaratory and injunctive relief, prohibiting Defendants from further engaging in conduct that violates the FCCPA;

      e.      Judgment against Defendants declaring that Defendants violated the TCPA;

      f.      Judgment against Defendants for statutory damages in the amount of $500.00 for each of Defendants' telephone calls that violated the TCPA;

      g.      Judgment against Defendants for treble damages in the amount of an additional $1,000.00 for each telephone call that violated the TCPA for which Defendants acted knowingly and/or willfully;

      h.      Actual damages in an amount to be determined at trial;

      i.      An award of attorneys' fees and costs; and

      j.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**LEAVENLAW**

/s/ *Aaron M. Swift*
☐ **Ian R. Leavengood, Esq., FBN 0010167**
**[X] Aaron M. Swift, Esq., FBN 0093088**
☐ **Gregory H. Lercher, Esq., FBN 0106991**
☐ **Sara Weiss, Esq., FBN 0115637**
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone: (727) 327-3328
Fax: (727) 327-3305
consumerservice@leavenlaw.com
aswift@leavenlaw.com
glercher@leavenlaw.com
sweiss@leavenlaw.com
*Attorneys for Plaintiff*

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA )
)
COUNTY OF Pinellas )

Plaintiff MURIEL JENKINS, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

_MURIEL JENKINS_

Subscribed and sworn to before me
this _15_ day of _Sept_ , 2016.

_Notary Public_

My Commission Expires: 4/7/2018

Proof of I.D.: _drivers license_

KELSEY MORTON
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF110322
Expires 4/7/2018